UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL ACTION V-08-05 |
| | § | |
| JOSE AMILCAR GONZALEZ-AVALOS | § | |
| | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant, Jose Amilcar Gonzalez-Avalos's ("Defendant" or "Avalos") Motion to Dismiss Indictment Barred by Statute of Limitations (Dkt. # 12).  On July 7, 2008, the parties presented arguments on the motion to dismiss before the Court. After considering the motion, responses, arguments and applicable law, the Court is of the opinion that the motion should be GRANTED.

**Procedural History**

In December 1992, under the name "Juan Serrito Torres," Defendant was convicted in California for transporting a controlled substance and sentenced to 180 days in jail and three years probation.  In 1993, while incarcerated in the Los Angeles County Jail, Defendant admitted to entering the United States illegally and executed a form declaring his true name to be Jose Amilcar Avalos.  He was thereafter deported to El Salvador.  In 2001, Defendant reentered the United States, and using the name "Amilcar Avalos," applied with immigration authorities for Temporary Protected Status ("TPS").  In the application, Avalos disclosed his correct Texas address and phone number and acknowledged that he had entered the United States illegally in 1988 and was deported from Los Angeles, California in 1993.[1]  He did not disclose that he had been deported based on a

---

[1] Avalos also submitted an Application for Employment Authorization in 2001, in which he did not disclose his previous deportation.

prior conviction for an aggravated felony, and he provided an inaccurate date of birth. Defendant's TPS application was granted, as well as other renewal applications under the name "Amilcar Avalos."[2]

It was not until 2005, when the immigration authorities became aware of another A-file and consolidated the two, that they discovered Defendant's true date of birth and previous conviction.[3] At that time, the immigration authorities notified Defendant that they were going to revoke his TPS status based on his prior conviction. Then, on January 20, 2008, a border patrol agent encountered Avalos at the Calhoun County Jail where he was being held for public intoxication. Avalos admitted to being a citizen of El Salvador and explained he was in the process of adjusting his immigration status. On February 13, 2008, Avalos was indicted for the offense of illegal reentry, a violation of 8 U.S.C. § 1326.

**Analysis**

At issue is when Avalos was "found in" the United States by immigration authorities, thereby triggering the statute of limitations. Avalos asserts that the indictment is time-barred because immigration authorities were aware of his actual and illegal presence in the country in 2001 when he applied for TPS status; however the Government maintains it was not until 2005 when the immigration authorities found his other A-file that Avalos was "found in" the United States for statute of limitations purposes.

---

[2] In September 2002, in his application for TPS re-registration, Avalos again disclosed that he had been deported in 1993.

[3] According to Defendant, two separate A-files existed for him. The first file contained information relating to Avalos's removal from Los Angeles in 1993. The second file included Avalos's various TPS applications beginning in 2001. The 2001 file contained information from the 1993 file, however, it is unclear when the 1993 information was placed in the 2001 file.

Under 8 U.S.C. § 1326, an alien who has previously been deported or removed commits the offense of illegal reentry when the alien thereafter "enters, attempts to enter, or is at any time found in, the United States. . . ." The statute of limitations applicable to the offense of illegal reentry is found in 18 U.S.C. § 3282, and provides that "no person shall be prosecuted, tried or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years after such offense shall have been committed." The statute of limitations begins to run at the time the alien is "found in" the United States. *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996).

In *United States v. Gunera*, the Fifth Circuit addressed when an alien is "found in" the United States for statute of limitations purposes. 479 F.3d 373 (5th Cir. 2007). In *Gunera*, the defendant provided his true name, date of birth, address and place of birth in his TPS application. *Id.* at 375. The defendant failed to mention his prior deportation. Based on the information given, the Texas INS Service Center ran his name and discovered a previous drug conviction and his prior removal from the United States. The discovery of the prior conviction caused INS to deny defendant's TPS application; however, the defendant was not indicted for illegal reentry until over five years after immigration officials had discovered he had been previously deported. *Id.*

The Government argued that when an alien omits information or gives false information, the Government cannot be held accountable for knowledge of the alien's illegal presence. *Id.* at 376. The Fifth Circuit rejected this argument and found that immigration authorities could be reasonably attributed with actual knowledge of the defendant's illegal presence on the date when the immigration authorities were notified that he had been previously deported. *Id.* Relying on earlier Fifth Circuit precedent, a previously deported alien is "found" within the United States for purposes

3

of § 1326 "when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to immigration authorities." *Id.* (citing *Santana-Castellano*, 74 F.3d at 598). The Fifth Circuit concluded that the defendant had disclosed sufficient information in his TPS application for the authorities to know that he was illegally present in the country, demonstrated by the fact that they were able to run a NAILS report and discover his prior conviction and deportation. Therefore, the statue of limitations began to run from the point they could be reasonably attributed with actual knowledge that defendant was present illegally in United States. *Id.*

In the instant case, the Government argues *Gunera* is distinguishable from Avalos's case because the "illegality of his presence was not his mere presence in the United States, but the fact that Immigration authorities [in *Gunera*] learned of his prior deportation based on a prior conviction for an aggravated felony" but did not indict him until five years later. The Court is not persuaded by this argument. The Government relies on the fact that Avalos did not disclose that he had been deported based on a prior conviction for an aggravated felony. The cause of his prior deportation is irrelevant. The critical information necessary to determine whether an alien is in the United States illegally is whether he had been previously removed or deported and whether he is presently in the United States. All such information was provided in Avalos's TPS application in 2001. The immigration authorities were able to discover his illegal presence through reasonable diligence, but did not act timely to do so.

## Conclusion

Avalos actually reported to immigration authorities in 2001 that he was illegally present in

4

the United States and had previously been deported.  At that point, the Government was put on notice of Defendant's illegal reentry.  Under the Fifth Circuit's holding in *Gunera*, this disclosure is sufficient for him to be "found in" the United States as the term is used in 8 U.S.C. § 1326, thereby commencing the limitations period.  Because the indictment was not returned until 2008, it is barred by the five-year statute of limitations.  Defendant, Jose Amilcar Gonzalez-Avalos's ("Avalos") Motion to Dismiss Indictment Barred by Statute of Limitations (Dkt. # 12) is GRANTED.

It is so ORDERED

SIGNED this 16th day of July, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE